1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

STEVEN KARL EDWARDS,

11                        Petitioner,

12          v.

13    DONALD R HOLBROOK,

14                        Respondent.

CASE NO. 3:19-CV-05153-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: June 28, 2019

15          The District Court has referred this action to United States Magistrate Judge David W.

16  Christel. Petitioner Steven Karl Edwards filed his federal habeas Petition ("Petition"), pursuant

17  to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See* Dkt. 1. The

18  Court concludes Petitioner failed to properly exhaust his state court remedies as to Ground 1.

19  Because Petitioner's time for pursuing state remedies has expired, Petitioner has procedurally

20  defaulted on Ground 1. Further, the state court's adjudication of Grounds 2-4 was not contrary

21  to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned

22  recommends the Petition be denied and a certificate of appealability not be issued.

23
24

# I.    Background

A.  <u>Factual Background</u>

The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> In October 2013, Peter Lahmann approached his truck, parked in southeast Tacoma, and saw Edwards and a female near the vehicle. The two saw Lahmann and immediately fled. Lahmann inspected the truck, discovered that his cell phone was missing, and took off in pursuit.
>
> As he ran after Edwards and the female, Lahmann heard gunshots, though he did not initially recognize the sound. He then saw Edwards pointing a firearm at him. Edwards said, "I'm going to kill you if you don't quit following me." Edwards then proceeded to fire at Lahmann.
>
> Two men drove up to Lahmann in a different truck and asked him if Edwards was shooting at him. He said yes, asked them to call the police, and ran off after Edwards again. Edwards continued to fire at Lahmann, and several people nearby witnessed the shooting.
>
> Lahmann eventually lost sight of Edwards and the female. However, the men in the truck saw the two enter a nearby garage-apartment and told Lahmann. The police arrived, and Lahmann and the men in the truck directed them to the garage. When confronted by police, Edwards admitted he had stolen Lahmann's cell phone. He was arrested, and police subsequently searched the garage-apartment. They found the cell phone as well as a semiautomatic handgun, which matched a bullet casing found in the street.
>
> Edwards' mother resided in the garage-apartment to which he fled. Edwards was prohibited by a protection order from coming within 500 feet of her residence or having contact with her. Despite that order, he had been with his mother at the residence earlier in the day.
>
> The State charged Edwards with first degree assault, first degree robbery, first degree burglary, and unlawful possession of a firearm. For each charge except that of unlawful possession, the State also charged Edwards with a sentencing enhancement for the use of a firearm in the commission of the crime. The jury found Edwards guilty on all counts and found that he committed the crimes with a firearm.
>
> The State sought a high-end sentence of 678 months' confinement. Because Edwards had a prior conviction with a firearm sentencing enhancement, each of the three enhancements added 120 months to his sentence, for a total of 360

months. The sentencing court imposed an exceptional downward sentence of 420 months' confinement, which included 60-month concurrent sentences for each underlying crime in addition to the 120-month enhancements.

Dkt. 10-2, pp. 379-80 (internal citations omitted); *State v. Edwards*, 194 Wash. App. 1050, *1 (2016).

B. <u>Procedural Background</u>

1. *Direct Appeal*

Petitioner challenged his Pierce County Superior Court convictions and sentence on direct appeal. *See* Dkt. 10-2, pp. 336, 357. The state court of appeals affirmed Petitioner's convictions and sentence. *Id*. at p. 379-87. Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *Id*. at pp. 414-31. On February 8, 2017, the state supreme court denied Petitioner's petition for review without comment. *Id*. at p. 436. The state court of appeals issued its mandate on March 14, 2017. *Id*. at p. 438.

2. *Personal Restraint Petition*

On February 9, 2018, Petitioner filed a personal restraint petition ("PRP") seeking state post-conviction relief. *See* Dkt. 10-2, pp. 441-51. The PRP was dismissed by the state court of appeals on July 27, 2018. *Id*. at pp. 485-87. Petitioner sought discretionary review from the state supreme court, which was denied by the commissioner of the state supreme court on December 28, 2018. *Id*. at pp. 489-92, 497-98. The state court of appeals issued the certificate of finality on March 8, 2019. *Id*. at p. 500.

3. *Federal Petition*

On January 17, 2019, Petitioner filed his Petition (Dkt. 1) raising the following four grounds:

1. The State failed to present sufficient evidence to prove all the elements of first degree burglary beyond a reasonable doubt.

2.  The State failed to present sufficient evidence to prove all the elements of first degree assault beyond a reasonable doubt.

3.  Counsel provided ineffective assistance when he failed to impeach Peter Lahmann with his inconsistent statements.

4.  Counsel provided ineffective assistance when he failed to ask for lesser-included-offense jury instructions.

On April 12, 2019, Respondent filed, and served on Petitioner, an Answer. Dkt. 9. In the Answer, Respondent asserts Petitioner failed to exhaust Ground 1 and this ground is now barred from federal review. *Id*. Respondent also argues the state court's adjudication of Grounds 2-4, was not contrary to, or an unreasonable application of, clearly established federal law. *Id*. Petitioner did not file a response to the Answer.

## II.    Discussion

### A.    Exhaustion and Procedural Default

Respondent first maintains Petitioner failed to exhaust Ground 1 and is procedurally barred from federal review of this ground. Dkt. 9.

#### 1.    *Exhaustion of State Remedies*

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v.*

*Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

In Ground 1 of the Petition, Petitioner alleges the State failed to present sufficient evidence to prove all elements of first degree burglary because the evidence failed to show Petitioner entered his mother's residence intending to commit a crime. Dkt. 1, p. 5. On direct appeal, Petitioner raised Ground 1, asserting the State failed to prove beyond a reasonable doubt that petitioner intended to commit a crime while inside his mother's residence. *See* Dkt. 10-2, p. 336. However, in his petition for review filed with the state supreme court, Petitioner did not allege there was insufficient evidence to convict him of first degree burglary. Rather, Petitioner challenged only the sufficiency of the evidence regarding the first degree assault conviction. *See id.* at p. 421. Petitioner did not raise Ground 1 in his PRP. *See* Dkt. 10-2, pp. 441-51 (raising only ineffective assistance of counsel in the PRP).

As Petitioner did not raise Ground 1 to the highest state court on direct appeal or in his PRP, he did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred when he was convicted of first degree burglary. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the

prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992) (finding claims were unexhausted when they were not raised on every level of direct review). Therefore, Ground 1 was not properly exhausted.

### 2. *Procedural Default*

Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

Ground 1 is procedurally defaulted because if Petitioner attempted to present this claim in a subsequent PRP, the state court would find the claim barred by Washington State law. Washington State imposes a one-year statute of limitations on filing a PRP or other post-conviction challenges. RCW § 10.73.090. The state court of appeals issued a mandate finalizing Petitioner's state direct appeal on March 14, 2017. Dkt. 10-2, p. 438. The time to file a petition or motion for post-conviction relief expired March 14, 2018, one year after Petitioner's direct appeal became final. *See* RCW 10.73.090(1), (3)(b). As the one-year statute of limitations has passed, Petitioner is barred from filing a subsequent PRP. *See id.* at (1).

Further, under Washington State law, the state court of appeals will not consider a second or successive PRP unless the petitioner certifies he has not filed a previous petition on similar

1  grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See*

2  RCW 10.73.140. Petitioner has not presented facts which could show good cause for his failure

3  to raise Ground 1 in his PRP. Therefore, Ground 1 is also subject to an implied procedural bar

4  because Ground 1 would be "prohibited by an independent, adequate, and mandatory rule of

5  state procedure, R.C.W. § 10.73.140, making a return to state court futile." *See Bolar v. Luna*,

6  2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

7      As Petitioner would be precluded from asserting the Ground 1 in the state court, this

8  claim is procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1;

9  *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Eisermann v. Penarosa*, 33 F.Supp.2d 1269,

10  1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state

11  court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied

12  because no state remedy remains available, but the petitioner has procedurally defaulted on his

13  claim.").

14      However, the procedural default will be excused and a petitioner will be entitled to federal

15  habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result

16  of the alleged violation of federal law, or demonstrate that failure to consider the claims will

17  result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126

18  (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show

19  some objective factor external to the defense prevented him from complying with the state's

20  procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).

21  To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the

22  errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and

23  substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

24  *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

REPORT AND RECOMMENDATION - 7

1    Only in an "extraordinary case" may the habeas court grant the writ without a showing of

2    cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional

3    violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477

4    U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the

5    evidence in light of new reliable evidence, the petitioner must show "it is more likely than not

6    that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v.*

7    *Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

8    Here, Petitioner fails to show some objective factor external to his defense prevented him

9    from complying with the State's procedural bar rule. Petitioner also fails to show the alleged trial

10   errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of

11   constitutional dimensions, and thus has not shown prejudice. Furthermore, Petitioner has not

12   provided new, reliable evidence showing he is actually innocent, and therefore this is not the

13   kind of extraordinary instance where this Court should review the claim despite the absence of a

14   showing of cause. Petitioner failed to show cause or prejudice to excuse his procedural default;

15   therefore, the Court is barred from reviewing Ground 1 on the merits. Accordingly, the

16   undersigned finds Petitioner is not entitled to relief as to Ground 1 and recommends Ground 1 be

17   dismissed. *See Casey*, 386 F.3d 896.

18   B.  Review of State Courts' Adjudication

19   Respondent maintains the state courts' adjudication of Grounds 2-4 -- the remaining

20   grounds raised in the Petition -- was not contrary to, or an unreasonable application of, clearly

21   established federal law. Dkt. 9.[1]

22

23

24   [1] Respondent also argues Ground 1 should be denied on the merits. *See* Dkt. 9. However, as the Court finds it is procedurally barred from considering Ground 1, the Court declines to consider Ground 1 on the merits.

1        1.  *Standard of Review*

2        Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the

3    basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a

4    decision that was contrary to, or involved an unreasonable application of, clearly established

5    Federal law, as determined by the Supreme Court of the United States." In interpreting this

6    portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to"

7    clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion

8    opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts

9    "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite

10   result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

11       Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply

12   because that court concludes in its independent judgment that the relevant state-court decision

13   applied clearly established federal law erroneously or incorrectly. Rather, that application must

14   also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An

15   unreasonable application of Supreme Court precedent occurs "if the state court identifies the

16   correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts

17   of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court

18   decision involves an unreasonable application of Supreme Court precedent "'if the state court

19   either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

20   where it should not apply or unreasonably refuses to extend that principle to a new context where

21   it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529

22   U.S. at 407).

23

24

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

### 2. *Sufficiency of Evidence (Ground 2)*

In Ground 2 of the Petition, Petitioner contends there was insufficient evidence presented to the jury to convict him of first degree assault. *See* Dkt. 1, p. 7. The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

The state court of appeals found there was sufficient evidence to convict Petitioner of first degree assault, stating:

> Edwards argues that the evidence before the jury was insufficient to establish his intent to inflict great bodily harm on Lahmann. We disagree.
>
> To find that Edwards committed first degree assault, the jury was required to find that he "[a]ssault[ed] another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death," and that he did so with

intent to inflict "great bodily harm." RCW 9A.36.011(1)(a). Edwards does not dispute that he fired a firearm at Lahmann.

A jury may infer that a defendant intended to, at least, inflict great bodily harm on the victim where the evidence shows that the defendant fired a firearm at the victim. *State v. Mann*, 157 Wn. App. 428, 439, 237 P.3d 966 (2010). Here, several different witnesses testified that they saw Edwards fire his weapon at Lahmann multiple times as Edwards fled. In addition, police found a firearm in the garage-apartment to which Edwards fled and matched it to bullet casings found along the path of his flight. This evidence was sufficient to establish beyond a reasonable doubt that Edwards fired at Lahmann and therefore sufficiently supports an inference that he intended to inflict great bodily harm.

Further, Lahmann testified that Edwards verbally threatened to kill him if he continued his pursuit. A defendant's threat to kill the victim is powerful circumstantial evidence that later dangerous conduct toward that victim was intended to be deadly. *See State v. Gallo*, 20 Wn. App. 717, 729, 582 P.2d 558 (1978). While Edwards contends that both his threat and the shots he fired were intended only to scare Lahmann, we must view the evidence in the light most favorable to the State. Viewed in that light, the evidence is sufficient to establish beyond a reasonable doubt that Edwards intended to inflict great bodily harm on Lahmann.

Dkt 10-2, pp. 383-84; *Edwards*, 194 Wash. App. 1050.

Petitioner was charged with assault in the first degree under Revised Code of Washington ("RCW") 9A.36.011(1)(a). Dkt. 10-2, p. 247; *see also* Dkt. 10-2, p. 321. Under this code provision, to convict Petitioner of first degree assault, the State had to prove Petitioner (1) assaulted another with a firearm or any deadly weapon or by force or means likely to produce great bodily harm or death" (2) with the intent to inflict great bodily harm. RCW 9A.36.011(1)(a). Under Washington State law, "great bodily harm" is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW

1 | 9A.08.010(1)(a); *see also Casaway v. Quinn*, 2008 WL 704194, at *16 (W.D. Wash. Mar. 13,
2 | 2008), *aff'd*, 389 F. App'x 666 (9th Cir. 2010).

3 |      Petitioner asserts the evidence showed he fired a gun into the ground and only threatened
4 | to shoot Lahmann if Lahmann continued to pursue Petitioner. Dkt. 1, p. 7. Petitioner argues the
5 | evidence shows only that Petitioner intended to end the foot chase. *Id*. Therefore, Petitioner is
6 | alleging only that the State failed to prove the intent element of first degree assault.

7 |      Viewed in the light most favorable to the prosecution, the evidence shows Petitioner
8 | pointed a gun at Lahmann, said "I'm going to kill you if you don't quit following me," and fired
9 | the gun. Dkt. 10-1, p. 212. Lahmann did not have time to retreat or take cover. *Id*. Lahmann
10 | continued to follow Petitioner at a distance and Petitioner turned and fired once or twice more.
11 | *Id.* at p. 215. Evidence presented to the jury also showed witnesses saw and/or heard Petitioner
12 | pointing and firing a gun at Lahmann, and a parked van was struck by a bullet during the time
13 | Petitioner was firing the gun. *See id*. at pp. 119-20, 138, 147-48, 162, 186-87. Further, a handgun
14 | that matched shell casings found near the area where shots were fired was recovered in the
15 | garage where Petitioner was located when he was taken into custody. *See* Dkt. 10-2, pp. 33, 99-
16 | 100.

17 |      Petitioner argues the evidence only showed he was intending to stop Lahmann from
18 | following him. Dkt. 1. However, evidence, viewed in the light most favorable to the prosecution,
19 | shows Petitioner threatened to kill Lahmann and, after threatening to kill Lahmann, aimed and
20 | fired a gun at Lahmann. Witnesses to the shooting testified that Petitioner was shooting at
21 | Lahmann. Further, a parked van was struck by a bullet, which a jury could infer showed
22 | Petitioner did not only shoot at the ground. Based on evidence presented to the jury, the jury
23 | could reasonably conclude that Petitioner intentionally aimed and fired a gun at Lahmann with
24 |

the intent to cause him great bodily harm. *See Huwe v. Uttecht*, 2013 WL 5770336, at *6 (E.D. Wash. Oct. 24, 2013) (stating that "[p]ointing a gun at a person and then firing is sufficient to establish intent to inflict great bodily harm"); *Casaway*, 2008 WL 704194, at *21 (citing Washington State law stating that "the trier of fact may infer specific criminal intent when a defendant's conduct plainly indicates the requisite intent as a matter of logical probability").

Petitioner has, thus, failed to show the state court's conclusion finding there was sufficient evidence to show Petitioner intended to inflict great bodily harm on Lahmann was contrary to, or was an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented in this case. Accordingly, Ground 2 should be denied.

        3.  *Ineffective Assistance of Counsel (Grounds 3 & 4)*

In Grounds 3 and 4, Petitioner alleges he received ineffective assistance of trial counsel. Dkt. 1, pp. 8, 10. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is,

1  the defendant must overcome the presumption that, under the circumstances, the challenged

2  action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

3          Under the prejudice prong, a petitioner must establish there is a reasonable probability the

4  results would have been different but for counsel's deficient performance. *Kimmelman v.*

5  *Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a

6  probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

7                  a.  Ground 3

8          In Ground 3, Petitioner alleges counsel's performance was deficient and prejudicial when

9  counsel failed to impeach Lahmann with his inconsistent statements. Dkt. 1, p. 8. Petitioner does

10  not specifically allege what inconsistent statements counsel failed to use to impeach Lahmann.

11  *See* Dkt. 1, p. 8. However, it appears Petitioner is challenging Lahmann's use of the term *shoot*

12  when interviewed by police as compared to *kill* while testifying at trial.

13          In determining Petitioner's trial counsel was not ineffective regarding the alleged failure

14  to impeach Lahmann, the state court of appeals applied the *Strickland* standard and found:

15          First, Edwards does not demonstrate deficient performance in cross-examining the
          victim. After the victim testified that Edwards told him, "I'm going to kill you if
16          you don't quit following me," Edwards's counsel confronted the victim with the
          statement he gave to the police, in which the victim said that Edwards told him
17          that "if you didn't quit following him that he was going to shoot you[.]" The
          victim replied that "I don't remember that. I mean, my recollection is that he said
18          he was going to kill me." Edwards's counsel's effort to impeach the victim's
          testimony was reasonable performance.

19
20  Dkt. 10-2, p. 486 (internal citations omitted).

21          During the trial, Lahmann testified, on direct examination, that Petitioner pointed a

22  firearm at Lahmann and said, "I'm going to kill you if you don't quit following me." Dkt. 10-1,

23  pp. 212-13. On cross-examination, Petitioner's counsel questioned Lahmann regarding his

24

1  testimony at trial in comparison to statements Lahmann made on the day of the incident. *See* Dkt.

2  10-1, pp. 225-26.

3       [Counsel:]   Now, Mr. Lahmann, you  -- your testimony here today was that this
        individual, when you had this initial confrontation . . . said to you that he would

4       kill you if you didn't stop –

5       [Lahmann:]   Yes.

6       . . .

7       [Counsel:]   Do you recall on that same day giving a recorded statement to the
        police officers?

8
        [Lahmann:]   I think I gave at least two, maybe three statements.

9
        [Counsel:]   You filled out a handwritten statement, correct?

10
        [Lahmann:]   Yes.  Yes.

11
        [Counsel:]   And then you also, while you were there . . . gave a more lengthy

12      statement to the police which was record –

13      [Lahmann:]   Okay.

14      [Counsel:]   -- do you remember that?

15      [Lahmann:]   Yes.

16      [Counsel:]    Okay. Do you recall saying in that statement, in response to a
        question as to what had happened, that this individual said to you if you didn't

17      quit following him that he was going to shoot you? Do you remember saying that?

18      [Lahmann:]   No – no, I don't remember that. I mean, my recollection is that he
        said he was going to kill me.

19
   *Id.*

20
        As shown from the state court record, on cross-examination Petitioner's counsel elicited

21
   testimony from Lahmann regarding his inconsistent statements. First, during cross-examination

22
   at the trial, counsel clarified with Lahmann that Petitioner said on the day of the incident that he

23
   was going to *kill* Lahmann. Next, counsel questioned Lahmann regarding the statement Lahmann

24

made to police officers on the day of the incident, wherein Lahmann stated that Petitioner had

threatened to *shoot* him. As the state court record shows Petitioner's counsel questioned

Lahmann regarding his prior statement to the police, Petitioner has failed to show counsel was

ineffective in failing to impeach Lahmann regarding his inconsistent statements.

Furthermore, Petitioner has not shown, or even alleged, any prejudice resulted by

counsel's performance during his cross-examination of Lahmann. *See* Dkt. 1, p. 8. Regardless of

whether Petitioner threatened to shoot or kill Lahmann, as discussed above, there was evidence

from witnesses that Petitioner fired a gun at Lahmann, which was sufficient to convict Petitioner

of first degree assault. Petitioner's vague assertion that counsel should have done more to

impeachment Lahmann on inconsistent statements is not sufficient to show there is a reasonable

probability the outcome of the assault conviction would have changed. *See Williams*, 539 U.S. at

391 (holding a petitioner must "show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different" to establish

prejudice).

Petitioner fails to show counsel's performance was deficient or that he was prejudiced by

his counsel's performance when counsel cross-examined Lahmann. Therefore, Petitioner has not

demonstrated the state court's conclusion that counsel's cross-examination of Lahmann was not

deficient was contrary to, or an unreasonable application of, clearly established federal law, or

was an unreasonable determination of the facts in light of the evidence presented at trial.

b.  Ground 4

In Ground 4, Petitioner alleges his trial counsel's performance was deficient because

"counsel failed to ask for lesser included offenses in the jury instructions where the evidence

1  clearly supported lesser charges[.]" Dkt. 1, p. 10. Petitioner does not explain what "lesser-

2  included-offenses" counsel should have sought. *See id*.

3        In determining Petitioner's trial counsel was not ineffective for failing to request jury

4  instructions on lesser-included-offenses, the state court of appeals applied the *Strickland* standard

5  and found:

> Second, Edwards does not demonstrate deficient performance in not requesting a
> lesser-included instruction for theft. By not requesting such an instruction,
> Edwards's counsel was able to argue that while Edwards might have committed
> an uncharged theft, he did not commit robbery. That strategic decision does not
> constitute deficient performance. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 43,
> 296 P.3d 872 (2013) (citing *Strickland*, 466 U.S. at 689-90).
>
> Third, Edwards does not demonstrate deficient performance in not requesting a
> lesser-included instruction for violation of a no-contact order because he does not
> show how such an instruction would have satisfied the legal prong or the factual
> prong of the test for lesser-included instructions set forth in *State v. Workman*, 90
> Wn.2d 443, 447-48, 584 P.2d 382 (1978). Thus, his counsel did not perform
> deficiently in not requesting such an instruction.

13 Dkt. 10-2, p. 486.

14        During closing arguments, Petitioner's counsel argued the jury could consider lesser-

15 included-offenses for assault, burglary, and robbery. Dkt. 10-2, p. 160. Counsel admitted

16 Petitioner committed, in relevant part, the crimes of theft of a cell phone and violation of a no-

17 contact order, but argued there were no jury instructions allowing the jury to convict Petitioner of

18 these crimes. *Id*. at p. 165. Counsel stated:

> You can take these 39 or 40 jury instructions and look through them now until
> next month and you will not see in here an instruction allowing you to convict
> [Petitioner] of theft, nor will you see an instruction or a verdict form allowing you
> to convict [Petitioner] of violation of a no-contact order because they aren't there.
> He wasn't charged with that. The State elected not to charge him with those
> crimes, but rather to go with robbery and burglary in the first degree.

*Id*.

1    Counsel then argued a robbery, in the first or second degree, did not occur; rather it was a

2    theft and Petitioner was not charged with theft. *See id*. at pp. 167-72. He also argued the State

3    failed to prove burglary, in the first or second degree. *Id*. at pp. 177-81. Again, counsel

4    maintained the evidence showed a violation of a no-contact order, not burglary, and the State had

5    not charged Petitioner with violation of a no-contact order. *Id*. at 180-81. Counsel argued the

6    proper verdicts in Petitioner's case were "not guilty of any degree of robbery [and] not guilty of

7    any degree of burglary[.]" *Id*. at p. 184. The jury instructions did include instructions for lesser-

8    included-offenses of second degree assault, second degree robbery, and residential burglary. *See*

9    *id*. at pp. 275-76, 278, 279, 281, 283, 285, 289, 293, 303-05.

10    Petitioner appears to assert his counsel was ineffective for not seeking additional jury

11    instructions which would have allowed the jury to consider charges of theft and violation of a no-

12    contact order. *See* Dkt. 1. "[T]rial counsel's decision to request, or not request, a particular jury

13    instruction (absent a defendant's statutory right to that particular instruction) is presumed to be

14    trial strategy or tactics, and does not show deficient representation under *Strickland*." *Hung Van*

15    *Nguyen v. Uttecht*, 2017 WL 5054574, at *11 (W.D. Wash. July 21, 2017).

16    Here, the state court of appeals found, and the state court record supports, that counsel's

17    trial strategy was to argue Petitioner was not guilty of any degree of robbery or burglary. The

18    state court record shows jury instructions for lesser-included-offenses were provided for both

19    robbery and burglary. Counsel argued there was reasonable doubt regarding whether Petitioner

20    committed robbery in the first degree or the lesser crime of robbery in the second degree and

21    whether Petitioner committed burglary in the first degree or the lesser crime of residential

22    burglary. Counsel maintained the evidence showed Petitioner committed a theft and violated a

23    no-contact order, but, as the State did not charge Petitioner with those two crimes, the jury

24

1  should return not guilty verdicts. Had counsel requested the trial court provide jury instructions

2  for theft and violation of a no-contact order, counsel would not have been able to use this trial

3  strategy.

4        Petitioner has not provided evidence, such as a declaration from his trial counsel,

5  supporting his assertion that counsel should have asked for additional jury instructions on lesser-

6  included-offenses. Petitioner also does not assert, or provide evidence showing, the trial judge

7  would have given any additional lesser-included jury instructions if requested by counsel or that

8  any additional lesser-included jury instructions would have changed the outcome of the trial. For

9  example, the jury was able to consider lesser-included-offenses of second degree robbery,

10  residential burglary, and second degree assault and still found Petitioner guilty of the higher

11  offenses. As such, Petitioner has not shown the outcome of his trial would have been different

12  had counsel requested jury instructions for additional lesser-included-offenses of theft and

13  violation of no contact order be given.

14        Petitioner has not shown the state court's conclusion that counsel did not render

15  ineffective assistance by failing to request jury instructions for additional lesser-included-

16  offenses was contrary to, or an unreasonable application of, clearly established federal law, or

17  was an unreasonable determination of the facts in light of the evidence presented at trial. *See*

18  *Miller v. Nooth*, 403 F. App'x 291, 292 (9th Cir. 2010) (finding counsels' performance was not

19  deficient when counsel made the strategic decision to pursue an "all-or-nothing" approach,

20  which was compatible with the law and evidence, to obtain an outright acquittal); *Hung Van*

21  *Nguyen*, 2017 WL 5054574, at * 11 (concluding the petitioner did not establish his counsel's

22  performance was deficient in failing to request a specific jury instruction where the petitioner

23  failed to provide evidence to support his assertion); *Hooks v. Ward*, 184 F.3d 1206, 1234 (10th

24

1  Cir. 1999) ("in the context of instructions on lesser included offenses, we see particular strategy

2  reasons why a defendant might not want to present the jury with a compromise opportunity");

3  *see also Matter of King-Pickett*, 2019 WL 92752, at *2 (Wash. Ct. App. Jan. 3, 2019) (finding

4  counsel was not deficient because under Washington State law theft in the first degree and theft

5  in the second degree were not lesser-included crimes as to the defendant's robbery in the first

6  degree charge).

7         c.  Conclusion

8         For the above stated reasons, the Court finds Petitioner has not shown the state court's

9  determination that Petitioner did not show his counsel provided ineffective assistance was

10  contrary to, or an unreasonable application of, clearly established federal law. Therefore, the

11  Court recommends Grounds 3 and 4 be denied.

12  **III.    Evidentiary Hearing**

13        The decision to hold an evidentiary hearing is committed to the Court's discretion.

14  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

15  hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

16  entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

17  available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

18  state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

19  entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

20  record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

21  court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to

22  hold an evidentiary hearing in this case because, as discussed in this Report and

23  Recommendation, Petitioner's grounds may be resolved on the existing state court record.

24

1    **IV.    Certificate of Appealability**

2        A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

3    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

4    (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

5    may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

6    constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

7    that jurists of reason could disagree with the district court's resolution of his constitutional

8    claims or that jurists could conclude the issues presented are adequate to deserve encouragement

9    to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*,

10   529 U.S. 473, 484 (2000)).

11       No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

12   would conclude the issues presented in the Petition should proceed further. Therefore, the Court

13   concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

14   **V.     Conclusion**

15       For the above stated reasons, the Court concludes Ground 1 is procedurally defaulted and

16   should be dismissed. The Court also concludes Grounds 2-4 should be denied as Petitioner has

17   not shown the state courts' adjudication of these three grounds was contrary to, or an

18   unreasonable application of, clearly established federal law. The Court also finds an evidentiary

19   hearing is not necessary. Therefore, the Court recommends the Petition be denied and a

20   certificate of appealability not be issued.

21       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

22   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

23   6. Failure to file objections will result in a waiver of those objections for purposes of de novo

24

REPORT AND RECOMMENDATION - 21

1   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

2   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June

3   28, 2019 as noted in the caption.

4        Dated this 7th day of June, 2019.

5

6                                                                            David W. Christel

7                                                                             United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24